AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Charles Rowland, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Senior Inspector (SI) with the United States Marshals Service (USMS), and I have been so employed for approximately eighteen years.  As an SI of the USMS, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18.

2. I am assigned to the Judicial Security Unit (JSU).  In the course of my official duties, I am charged with the investigation of crimes involving the violation of offenses under Title 18, including cyberstalking and threatening interstate communications.  The following information was developed by me and/or provided to me by other law enforcement officers, and other persons, in connection with the USMS investigation.  The information contained in this affidavit is from my personal knowledge, as well as from information provided to your affiant by other law enforcement officers and/or witnesses, including those listed herein.  Due to the fact that this affidavit is being made to establish probable cause, your affiant has not listed each and every fact known regarding this investigation.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. I make this affidavit in support of an application for a search warrant under Title 18 United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), requiring Meta Platforms,

Inc. to disclose to the government records and other information in its possession, including contents of communications, pertaining to the subscriber or customer associated with username gfgf_lennykoss (hereinafter "Target Account"). The Target Account is a certain Instagram account owned by Meta Platforms, Inc. and headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in the Attachment.

5.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on or about May 11, 2022, in the District of Arizona and elsewhere, Lenny Edward KOSS (KOSS) committed Interstate Communications Involving a Threat, in violation of 18 U.S.C. § 875(c), by posting a video on Instagram using the Target Account and threatening to kill USMS personnel at the Evo DeConcini federal courthouse in Tucson, Arizona. Your Affiant also has probable cause to believe that on or about May 11, 2022, KOSS possessed a dangerous weapon in a federal court facility, to wit: four folding knives, each having a blade longer than five inches, in the Evo DeConcini federal courthouse in Tucson, Arizona, in violation of 18 U.S.C. § 930(e)(1).

6.  There is also probable cause to search the Target Account for information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes further described in the Attachment.

JURISDICTION

7.  This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A) and (d). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below,

the acts or omissions in furtherance of the offenses under investigation occurred within the District of Arizona. *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

8. On or about May 11, 2022, in the District of Arizona and elsewhere, there is probable cause to believe that Lenny Edward Koss committed Interstate Communications Involving a Threat, in violation of 18 U.S.C. § 875(c), by posting a video on Instagram using the Target Account and threatening to kill U.S. Marshals Service (USMS) personnel at the federal building.

9. In the Instagram video posted on May 11, 2022, KOSS is seen walking outdoors and videotaping himself with a cellular phone. As KOSS continued walking, he said, "Well, let's see how real this is gonna get Huachuca. I'll go turn myself in to U.S. Marshals. Those fuckers attack me, I kill everybody in that office. That simple. I'll head downtown now, bus number 21. I'm walking down to Greasewood as we speak. Then I'll walk through and I'll walk in that federal building with all my weapons. And I'm not disarming. I'm standing there until I have answers. The biggest fucking display of protest against dirty cops in Arizona."

10. That same day, on May 11, 2022, at approximately 3:15 pm, a person later identified as KOSS entered the Evo DeConcini federal courthouse and approached the screening station. When instructed to place all metal objects and bags in a bin for screening, KOSS complied and placed four folding knives into the screening tray. All four knives had blades that were longer than five inches. The Evo DeConcini federal courthouse has signs posted at each entrance prohibiting the possession of any dangerous weapons, including knives of any size, in that facility and notifying the public that doing so may subject a person to arrest. As such, a Court Security Officer (CSO) advised KOSS he could not have any weapons in the courthouse. KOSS became agitated and his tone of voice started

to rise claiming he needed to see U.S. Marshals. The CSO explained that KOSS would need to gather his property, exit the courthouse, and return without any weapons or prohibited items. KOSS complied but, upon exiting the courthouse, he remained in the courtyard area talking to himself and displaying agitated physical gestures. After a few moments, KOSS left the area without incident.

11. At approximately 7:50 pm that same day, Tucson Police Department (TPD) officers were dispatched to the University Villa Apartments located at 2550 W. Ironwood Hill Drive reference a welfare investigation. A Fort Huachuca Crisis employee informed TPD dispatch that a patient identified as KOSS was on the phone making threats to shoot anyone who came to his door. The employee informed dispatch that KOSS left the military in 2003, that the employee had been speaking to KOSS for approximately two hours, and that during their conversation, KOSS had freely provided his Instagram account as @gfgf_lennykoss, the Target Account.

12. Further investigation revealed that KOSS posted another video on Instagram on May 11, 2022, from the Target Account. In that video, KOSS is seen standing outside stating, "Let the invasion begin. Kill 'em all. Politicians, bad guys, all of them. Nah, I'm done. Just annihilate them. Kill 'em. Period. Politicians, all the bad buys, kill 'em."

13. On May 12, 2022, Meta Platforms, Inc. was served with a preservation letter under 18 U.S.C. § 2703(f) related to the Target Account.

BACKGROUND CONCERNING INSTAGRAM ACCOUNTS

14. From my review of publicly available information provided by Meta Platforms, Inc. about its service, including Meta Platforms, Inc's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Meta Platforms, Inc.

15. Meta Platforms, Inc. owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

16. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

17. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Meta Platforms, Inc.

18. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account

is created, users may also adjust various privacy and account settings for the account on Instagram. Meta Platforms, Inc. collects and maintains this information.

19. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Meta Platforms, Inc. collects and maintains this information.

20. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

21. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Meta Platforms, Inc. collects and maintains user content that users post to Instagram or share through Instagram.

22. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

23. Users on Instagram may also search Instagram for other users or particular types of photos or other content.

24. For each user, Meta Platforms, Inc. also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Meta Platforms, Inc's servers automatically record is the particular web requests, any Internet Protocol ("IP) address associated with the request,

type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

25. Meta Platforms, Inc. also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Meta Platforms, Inc. to collect information about how a user uses Instagram. For example, Meta Platforms, Inc. uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

26. Meta Platforms, Inc. also collects information on the particular devices used to access Instagram. In particular, Meta Platforms, Inc. may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

27. Meta Platforms, Inc. also collects other data associated with user content. For example, Meta Platforms, Inc. collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

28. Meta Platforms, Inc. also may communicate with the user, by email or otherwise. Meta Platforms, Inc. collects and maintains copies of communications between Meta Platforms, Inc. and the user.

29. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an

Instagram user's account activity, IP log, stored electronic communications, and other data retained by Meta Platforms, Inc., can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Meta Platforms, Inc. logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Meta Platforms, Inc. builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30. Based on the information above, the computers of Meta Platforms, Inc. are likely to contain all the material described above with respect to the Target Account, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Meta Platforms, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of the Attachment. Upon receipt of the information described in Section I of the Attachment, government-authorized persons will review that information to locate the items described in Section II of the Attachment.

## CONCLUSION

32. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of 18 U.S.C. 875 (c) and 18 U.S.C. 930 (e)(1) be located in the Target Account described in the Attachment.

33. Based on the forgoing, I request that the Court issue the proposed search warrant.

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by

serving it on Meta Platforms, Inc. Because the warrant will be served on Meta Platforms, Inc., who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

CHARLES ROWLAND
Digitally signed by CHARLES ROWLAND
Date: 2022.05.23 10:35:50 -07'00'

Charles Rowland, Senior Inspector, USMS

Sworn to and subscribed telephonically:

Date/Time:  5/23/2022   12:22 p.m.

*Leslie A. Bowman*
HON. Leslie A. Bowman
United States Magistrate Judge